

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

November 7, 2022

The Honorable Phillip M. Halpern
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

Re:  **United States v. Jonathan Weiss**
     **21 Cr. 449 (PMH)**

Dear Judge Halpern:

Sentencing in the above-referenced case is scheduled for November 15, 2022.  The Government respectfully submits this letter to request that the Court impose a sentence of at least 20 years' imprisonment to be followed by a 20-year term of supervised release. As discussed below, the requested substantial sentence is necessary to protect the public and appropriate given the seriousness of the defendant's offense conduct and the defendant's repeated abuse of minors.

**Factual Background**

A.  **Offense Conduct**

Victim 1 and Victim-2

In or about May 2020, Homeland Securities Investigations ("HSI") became aware that an Investigator ("Investigator-1") with the Clay County Sheriff's Office in Orange Park, Florida had received a report concerning contact on Snapchat between a 13-year-old minor ("Victim-1") and a male who used the Snapchat screen name "Ian_Jameson." (PSR ¶ 16).

Investigator-1 interviewed Victim-1. Victim-1 advised that she received a message from a Snapchat account, "Ian_Jameson," initiating a conversation.  Subsequently, "Ian" directed Victim-1 to take nude photos and transmit them to him.  In response to his request, Victim-1 sent "Ian_Jameson" several images.  In the

images, her bare breasts and her bare vagina were exposed.  In the photos, Victim-1's mirror, pink bedroom curtains, a sticker for "Ron Jon Surf Shop" and a sticker for "USA Gymnastics" were visible in the background.  "Ian_Jameson" told her that, if she did not send him more pictures, he would send her nude pictures to others. (PSR 17).

In response to the threats, Victim-1 ended her communications with "Ian_Jameson" by "blocking" "Ian_Jameson" on Snapchat. Then, Victim-1's friends ("Friend-1" and "Friend-2") began telling her that they had received her nude images. (PSR ¶ 17).  The friends sent Victim-1 the nude images of Victim-1 that they had received. The images they sent Victim-1 were the same images that Victim-1 had sent to "Ian_Jameson" and only to "Ian_Jameson." (PSR ¶ 17).

Investigator-1 interviewed Friend-1, who advised that she had spoken with an "Ian Jameson" in the past on Snapchat.  Friend-1 stated that Friend-2 had sent Friend-1 images that Friend-2 said "Ian" had sent to Friend-2. Friend-1 said that, in the images, Victim-1 was completely nude with her bare breasts and vagina exposed. (PSR ¶ 18).  Investigator-1 interviewed Friend-2, who advised that Friend-2 had received nude images of Victim-1 and another juvenile known to Friend-2 ("Victim-2") from someone known to Friend-2 as "Ian" via Snapchat.  Friend-2 stated that "Ian" sent her the images in or about the Fall of 2019. Friend-2 stated that, in the images she received from "Ian," both of the girls were standing with their bare breasts and vaginas exposed directly to the camera. (PSR ¶ 18).  Friend-2 advised that "Ian" had asked Friend-2 for pictures of her feet, and she thought that was weird, so she blacked his Snapchat account.  Friend-2 showed Investigator-1 the Snapchat account for "Ian_Jameson" and confirmed that this account was the account from which she received the images of Victim-1 and Victim-2. (PSR ¶ 18).

On or about May 14, 2020, Investigator-1 spoke to Victim-2. Victim-2 advised that she was familiar with someone who used the Snapchat name "Ian_Jameson." Victim-2 believed that "Ian_Jameson" "friended" her on Snapchat because he was friends with several other girls with whom she went to school. Victim-2 was 13 years old at the time of her contact with "Ian_Jameson." She told him that she was 13 years old and in middle school. He told her that he was 15. Victim-2 advised that she had not spoken to "Ian_Jameson" since in or about September 2019. Prior to that, she was in contact with him for a few months. During the period in which they were in contact, he would ask, every day, for "nudes." Victim-2 said that she felt like he would stop talking to her if

she did not send him the images he requested.  In response to his requests, she sent him approximately ten nude images with her bare breasts, vagina and buttocks exposed. (PSR ¶ 19).

In May 2020, Investigator-1 interviewed a 13-year-old minor ("Minor-1") and Minor-1's mother. Minor-1 advised that, in or about the Fall of 2019, she began speaking with an individual on Snapchat with the Snapchat screen name, "Ian_Jameson." Minor-1 advised that "Ian_Jameson" sent her, via Snapchat, an image of a penis.  When Minor received the image, she showed it to her mother. Minor-1's mother reported that Minor-1 showed her a photo she received from "Ian_Jameson" on Snapchat.  Minor-1's mother described the photo as a photo of a post-pubescent male's bare erect penis.  Minor-1's mother advised that she (Minor's mother) used Minor's Snapchat account to confront "Ian_Jameson" about sending a lewd image to a child.  He responded via Snapchat and said that it was okay because he was only 8 years old.  After this exchange, Minor-1 deleted the image of the penis and blocked "Ian_Jameson" from her Snapchat account. (PSR ¶ 20).

Snapchat records revealed that the Snapchat user with the screen name "Ian_Jameson" created that Snapchat account on or about December 30, 2015. The Snapchat records identified an email address ("Email-1") and a telephone number ("Number-1") associated with the Snapchat account. In addition, the Snapchat records included Internet Protocol ("IP") history for logins to Snapchat by "Ian_Jameson" from in or about October 10, 2019 up to and including on or about April 1, 2020.  A review of the Snapchat records revealed numerous logins from a particular IP address ("IP-1"), including multiple logins from October 2019 through April 1, 2020. The investigation revealed that the defendant was the subscriber of IP-1 and the owner of Email-1 and Number-1. (PSR ¶ 21).

On or about May 22, 2020, United States Magistrate Judge Judith C. McCarthy authorized a search warrant for the defendant's residence.  On May 27, 2020, law enforcement officers executed the search warrant and seized, among other items, two iPhones, one with a blue case ("iPhone-1") and one with a black case ("iPhone-2"). The defendant, who was at the residence at the time of the search, identified iPhone-1 as his personal phone and iPhone-2 as his work phone. The defendant also acknowledged that the Snapchat account with the name "Ian_Jameson" was his Snapchat account and that the account was based on the name of a childhood friend (Ian) together with a whiskey he likes (Jameson). (PSR ¶ 22).

The forensic review of the items seized on May 27, 2020 revealed, among other things, that iPhone-1 contained numerous files ("Opened Snap Files") of what appear to be photos of opened Snaps and video recordings of Snaps as they are opened. In some of the video files, the outlines of a black iPhone and a thumb is visible and it appears that the user of iPhone-1 is using iPhone-1 to video something that is being played on a black iPhone. In some of the Opened Snap Files that are video recordings of Snaps being played, the thumb appears to touch the screen in order to open or activate the Snap. Among these "Opened Snap Files" are sexually explicit photos and videos of Victim-1 and Victim-2.  (PSR ¶ 23).

Within the "Opened Snap Files" are four video files and approximately 34 still image files that depict Victim-1.  Based on data embedded in these files, these files were created on or about September 11, 2019 and September 16, 2019. In many of the files, Victim-1's mirror, pink bedroom curtains, "Ron Jon Surf Shop" and "USA Gymnastics" stickers are visible in the background. These files depict Victim-1 in various stages of undress, including fully naked standing in front of a mirror as well as fully naked seated on the floor with her legs spread and her vagina visible. (PSR ¶ 24).

In addition, within the "Opened Snap Files" found on iPhone-1 are fourteen video files and 28 still image files that depict Victim-2.  In a number of the video files, the name of Victim-2's Snapchat account is visible as the Snap is opened. Based on data embedded in the files, these files were created on or about August 11, 2019. In these files, Victim-2 appears in various stages of undress, including fully naked standing and sitting, and fully naked seated on the floor with her legs spread and her vagina visible. (PSR ¶ 25).

<u>Victim-3</u>

The forensic review of iPhone-1 also revealed a video file that, according to data embedded in the files, was created on May 17, 2020. The video file appears to be a video recording of a FaceTime video call made on another iPhone. In the video, the main screen of the video call reveals a pubescent female ("Victim-3") while the smaller screen in the corner reveals the defendant's face. In the video, Victim-3, who is lying on a bed and is naked from the waist down, penetrates her vagina with her fingers. The defendant asks, "How's that feel? Do three fingers, keep your feet down like that, oh yeah, keep your feet down baby, like towards the camera, yeah right like that, now go three fingers and fuck

yourself hard, yeah baby, how's that feel, tell me how it feels." Victim-3 responds, "It hurts." The defendant says, "Go harder harder deeper, get it in, get your hands in really deep and then move your fingers, yeah baby." (PSR ¶ 26).

        The forensic review of iPhone-1 revealed four additional video files of Victim-3 that, according to data embedded in the files, were made on May 26, 2020, the day before law enforcement executed the search of the defendant's residence. These files are also recordings of FaceTime video calls made on another iPhone. In all four videos, the main screen of the video call reveals Victim-3, while a smaller screen in the corner reveals an erect penis.  In one of the videos, Victim-3, whose genital area is naked, places a purple comb in her mouth and then inserts the comb into her vagina multiple times. On the recording, a male's voice can be heard saying, among other things, "Damn baby girl" and "Alright let's see, does it go in?"  In another of these videos, Victim-3 inserts a small pink bottle into her naked vagina and moves it around. The male's voice can be heard saying, "Like that pussy. Damn, how's that feel baby?" (PSR ¶ 27).

        In connection with this investigation, Victim-3 was identified.  Victim-3 was 13 years old and lived in Texas at the time of her communications with the defendant. When interviewed by law enforcement, Victim-3 said that she met "Ian" on Snapchat in or about March of 2020 and that he told her he was 14 years old and lived in Middletown, New York. He told her that his parents were strict, that his dad was a part-time firefighter and builds houses. He told her that his mother was a nurse. He told her that he played football and baseball. She communicated with him by Snapchat, FaceTime and by text. Victim-3 advised that "Ian" repeatedly asked her to send him nude pictures and videos of her masturbating and she felt pressured to do so. (PSR ¶ 10). He sent her links to pictures of girls and boys engaging in sexual activity and he wanted her to do the things he showed her in pictures and videos.

### Victim-4, Victim-5, Victim-6 and Victim-7

        In connection with the investigation, four additional female victims were identified, all of whom communicated with "Ian_Jameson" on Snapchat and all of whom created sexually explicit images for the defendant at the defendant's request. These victims' sexually explicit images were found during the review of the defendant's phones.

Victim-4 was a 14-year-old in Colorado. Victim-5 was a 16-year-old in Minnesota. Victim-6 was a 13-year-old in New York. Victim-7 was a 13-year-old in New York. The defendant told some of these girls he was 14 years old and he told others he was 15. During his communications with each of them, he persuaded them to engage in sexually explicit activity, photograph and/or video it, and transmit it to him. Sometimes, in order to convince them to send additional images, he told them that if they did not send more images, he would send the photos they had already sent him to others.

B. **The Federal Charges and the Guilty Plea**

Information 21 Cr. 449 (PMH), filed on July 13, 2021, charged Weiss in seven counts. Each count charged that Weiss, in violation of Title 18, United States Code, Section 2422(b), persuaded, induced, enticed, and coerced a minor to engage in sexually explicit activity and photograph, video, and/or live-stream it to Weiss. Each count related to a different victim. The time frame of the different counts covered the period from in or about June 2018 through in or about May 2020.

On December 9, 2021, Weiss entered a guilty plea to all seven counts pursuant to a plea agreement with the Government (the "Plea Agreement"). Pursuant to the Plea Agreement, the parties agreed that each of the counts formed a separate group. The Plea agreement found that, for each of the groups, the base offense was 28 (§ 2G1.3(a)(3)), that two levels were added because the offense involved the misrepresentation of a participant's identity to induce the minor to engage in prohibited sexual conduct (§ 2G1.3(b)(2)), that two levels were added because the offense involved the use of a computer to persuade the minor to engage in prohibited sexual contact (§ 2G1.3(b)(3)), and that two levels were added because the offense involved the commission of a sex act or sexual contact (§ 2G1.3(b)(4)). The Plea Agreement provided, that based on the above, the offense level would be 34. However, because the offense involved causing, transporting, permitting or offering or seeking by notice or advertisement a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, § 2G1.3(c)(1) applied which directed the application of § 2G2.1. The Plea Agreement found that, pursuant to § 2G12.1(a), the base offense level was 32, that two levels were added because of the age of the minor (§ 2G2.1(b)(1)(B), that two levels were added because the offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2), and that two levels were added because

the offense involved the knowing misrepresentation of the defendant's identity and also because it involved the use of a computer (§ 2G2.1(b)(6)). Accordingly, pursuant to § 2G2.1, the offense level for each group was 38, which is greater than 34.

The Plea Agreement concluded that, after applying the grouping rules (which added five levels), the three-level reduction for acceptance of responsibility, and the five-level enhancement for Repeat and Dangerous Sex Offenders (§ 4B1.5(b)(1)), the total combined offense level would be 45. The Plea Agreement recognized that, pursuant to U.S.S.G., Chapter 5, Part A, Application Note 2, a total offense of more than 43 is to be treated as an offense level of 43. Accordingly, the adjusted offense level was 43.

## C. **The Presentence Report**

Consistent with the Plea Agreement, the Probation Office determined that Weiss's offense level was 43, which resulted in a Guidelines' sentence of life imprisonment.

The PSR recommends that the Court impose a sentence of 15 years' imprisonment.  In explaining the basis for this recommendation, the PSR recognizes that Weiss "victimized seven children during the course of this offense." As the PSR recounts, "He coerced them to take and send sexually explicit pictures through a social media application.  He then threatened them with exposure if they did not send additional pictures." PSR at p. 25.  The PSR explains that a "significant term of imprisonment is warranted here" because "[t]he safety of the community along with specific and general deterrence are paramount in fashioning a recommendation." PSR at p. 25.

Nonetheless, in recommending a 15-year-sentence, a sentence well-below the Guidelines range of life imprisonment, the PSR states that the defendant's "education and employment history, his lack of criminal history and the need for treatment upon his release" warrant a variance. PSR at 25.  Based on those considerations, the Probation Office concludes that a sentence of 180 months' imprisonment would be sufficient, but not greater than necessary. PSR at p. 25.

## ARGUMENT

### A Sentence of At Least 20 Years Is Appropriate Here

The applicable Guidelines' sentence here is lifetime imprisonment.  While the Government, like the Probation Office, does not believe that lifetime imprisonment is necessary here, the Government believes that a sentence longer than the 15 years recommended by the Probation Office is appropriate.  The Government submits that a sentence not less than 20 years, to be followed by a 20-year term of supervised release, is the lowest sentence that would be sufficient, but not greater than necessary, to comply with the 3553(a) factors.  The requested sentence is necessary to protect the public from a dangerous predator and is appropriate given the seriousness of the defendant's offense conduct and the defendant's repeated predatory abuse of minors.

Although the Sentencing Guidelines no longer play a mandatory role at sentencing, they continue to play a critical role in trying to achieve the "basic aim"  that Congress tried to meet in enacting the  Sentencing  Reform Act, namely, "ensuring similar sentences for  those who have committed similar crimes in similar  ways." *United States v. Booker*, 543 U.S. 220, 252  (2005).  In furtherance of that goal, judges are required to "consider the Guidelines `sentencing  range established for... the applicable category of  offense committed by the applicable category of  defendant,' § 3553(a)(4), the pertinent Sentencing  Commission policy statements, the need to avoid  unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3),  (5)-(7) (main ed. and Supp. 2004)." 543 U.S. at  259-60.

In sentencing defendants, district courts must consider not only the Guidelines but also the other factors set forth in Section 3553(a).  Section 3553(a) provides that the sentencing "court shall impose a  sentence sufficient, but not greater than necessary,  to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations that district courts must  take  into account at sentencing:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;  (B) to afford adequate deterrence to criminal  conduct; (C) to protect the public from further

crimes of the defendant; and  (D) to provide the defendant with
needed educational or vocational training, medical care, or
other correctional treatment in the most effective manner; (3)
the kinds of sentences available;  (4) the kinds of sentence and
the sentencing range established [in the Sentencing Guidelines];
(5) any pertinent policy statement [issued by the Sentencing
Commission]; (6) the need to avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct; and (7) the need to provide
restitution to any victims of  the offense. 18 U.S.C. § 3553(a).

## A.   The Requested Sentence Will Reflect the Seriousness of the Offense Conduct and Provide Just Punishment

     Here, given the offense conduct, the requested
substantial sentence cannot be considered "greater than
necessary" to achieve the goals of sentencing.  Jonathan Weiss
is a manipulative sexual predator.  He created a false online
identity, portraying himself as a young teenage boy. Then, he
used this misrepresentation to find young girls, adeptly
navigating through their circles of friends to find more young
girls upon whom to prey. A number of the victims told law
enforcement that they began corresponding online with "Ian"
because their friends were friends with him. Given that he
appeared to be friends with their friends, they never considered
that he was not who he said he was. Weiss persuaded these young
girls to take and send him sexually explicit images of
themselves. When some of his victims refused to send more
images, he threatened them, telling them that he would share the
images they had already sent to him with their friend group if
they did not comply. And he carried out these threats.  Victim-1
blocked him when he demanded additional sexually explicit
photos. After Victim-1 blocked him, the defendant sent Victim-
1's sexually-explicit photos to her friends.

     Weiss's predatory conduct was extensive. It occurred over
a period of years, from at least in or about June 2018 to May 2020.
Seven victims have been identified by law enforcement. Moreover,
the investigation made clear that there were many would-be victims
along the way – children who stopped communicating with "Ian" after
he sent them sexually explicit photos or blocked him when he
demanded sexually explicit images from them.

## B.   A 20-Year Sentence Is Necessary To Protect The Public

     Weiss repeatedly engaged in sexually explicit
communications online with children and directed them to produce

and transmit sexually explicit images.  Weiss's conduct – and
the fact that he preyed on numerous children over a substantial
period of time – underscores his inability to control his sexual
appetite for children. Indeed, the investigation revealed that
one 13-year-old (Minor-1) received a photo from "Ian_Jameson" of
a male's erect penis.  She showed it to her mom, and when Minor-
1's mother confronted "Ian" via Snapchat about sending a lewd
image to a child, he responded and said that it was okay because
he was only 8 years old.  The fact that this exchange did not
deter him from continuing to prey on children highlights the
seriousness of his conduct and his inability to control himself.
The requested sentence is necessary to incapacitate him for a
long time so that he cannot hurt another child.

        The Probation Office states that Weiss's "education and
employment history" constitute a factor justifying a variance.
(PSR at p.25).  Defendant's submission underscores that Weiss
"dedicated his life to the service of others, first  as a
volunteer EMT, then as a volunteer firefighter, and finally as a
physician's assistant." (Defense Submission at 11). While the
Government recognizes the contributions Weiss made, it bears
underscoring that the fact that Weiss engaged in the offense
conduct notwithstanding his education and employment speaks
volumes concerning the extent of his sexual addiction for
children. Even with so much to lose, Weiss could not stop
himself from engaging in the instant criminal conduct and
abusing children. Moreover, although the defendant has expressed
remorse and a desire for treatment, neither his remorse nor his
desire for treatment mitigate the danger that Weiss poses to the
community.  Indeed, no one can predict, with any degree of
confidence, that Weiss will adhere to a treatment program or
that, after treatment, he will not pose a danger.

        The Government does not lightly request a sentence of
not less than 20 years' imprisonment for a 32-year-old.  Here,
however, the Government submits that the requested sentence is
necessary.  Weiss used manipulation and deceit to prey on
numerous children. For these reasons, neither the sentence
requested by the defendant nor the sentence recommended by the
Probation Office is sufficient.

**C.   The Requested Sentence Will Provide Adequate Deterrence
       and Promote Respect for the Rule of Law**

        In addition to protecting the public and providing a just
punishment, the requested sentence of not less than 20 years'
imprisonment would send an important message of deterrence to

Weiss, underscoring that this serious offense conduct will be met with serious consequences. Hopefully, after serving this lengthy period of imprisonment, Weiss will be deterred from reoffending upon his release.  Further, the requested sentence would also send an important message of deterrence to all others who prey, as Jonathan Weiss did, on the most defenseless and vulnerable members of our community – our children.

### Conclusion

For all the foregoing reasons, the Government requests that this Court impose a sentence of at least 20 years' imprisonment to be followed by a 20-year term of supervised release.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____
    Marcia S. Cohen
    Assistant United States Attorney
    (914) 993-1902

cc:  John Ingrassia, Esq.
     Nicolo Dimaria, USPO